# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

STEVEN DOUGLAS SLOAN,     )
                                  )
                 Plaintiff,   )
v.                             )      Case No. CIV-10-387-D
                                  )
GENESE McCOY, MARY STEBENS, and  )
JAMES YOUNG,                )
                 Defendants.  )

## REPORT AND RECOMMENDATION

Plaintiff, Steven Douglas Sloan, a state prisoner appearing *pro se* and *in forma pauperis*, has filed a Complaint seeking redress for alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. The matter has been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Pending before the Court is Defendants' Motion for Summary Judgment and Brief in Support [Doc. #17], to which Plaintiff has filed a Response [Doc. #30]. Defendants have filed a Reply to Plaintiff's Response [Doc. #31]. In addition, the Court has received the court-ordered Special Report [Doc. #19].

For the reasons set forth below, it is recommended that Defendants' Motion be granted and that judgment as a matter of law be entered in favor of each of the Defendants.

## I.  Factual Background / Plaintiff's Claims

Plaintiff is an inmate in the custody of the Oklahoma Department of Corrections (ODOC) and incarcerated at William S. Key Correctional Center (WKCC) in Fort Supply, Oklahoma. Plaintiff brings a single claim for relief in this action. He alleges a violation of his Eighth Amendment rights claiming that Defendants have been deliberately indifferent

to his serious dental needs by delaying necessary dental treatment and, in particular, his need for partial dentures.[1]

## II.    Named Defendants and Relief Sought

Plaintiff names the following Defendants: Genese McCoy, Health Services Coordinator for the ODOC, Mary Stebens, the Health Services Coordinator for WKCC, and James Young, D.D.S., a dentist providing dental services to inmates in the custody of the ODOC and Plaintiff's treating dentist during his incarceration at WKCC. As relief, Plaintiff seeks compensatory and punitive damages, attorney fees and other just and equitable relief.

## III.    Standard of Review

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. and Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). Although Defendants, as the moving parties, bear the initial burden of production, once they meet this burden, Plaintiff "may not rest on [his] pleadings, but must bring forward specific facts showing a genuine issue for trial." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation and internal quotations omitted).

---

[1]Although Plaintiff also frames his claim as a denial of dental care, the Court finds no evidence in the record that Plaintiff was ever denied such care.

**IV.     Analysis**

**A.      Undisputed Material Facts**

Based upon the facts as shown by the Complaint, the Special Report, and Plaintiff's Response to Defendants' Motion for Summary Judgment, the following material facts are undisputed.

1.      The ODOC has a Dental Services Program.  *See* Special Report, Attachment 6, ODOC Dental Services, OP-140124.  The Dental Services Program provides that offenders receive care, as needed, while in reception and that "other classes of care will be provided by the receiving facility's dentist to include an examination and treatment plan."  *See id.*, at ¶ I(C)(6).

2.      Following reception at the James Crabtree Correctional Center (JCCC) on November 10, 2003, Plaintiff underwent a dental examination.  On January 14, 2004, he was x-rayed and placed on a dental plan in accordance with ODOC's Dental Services Program.[2] *See* Special Report, Attachment 1, Plaintiff's Consolidated Record Card (CRC); *see also id.*, Attachment 5, Plaintiff's dental treatment records (Treatment Records).[3]

-----

[2]Plaintiff does not allege any violation of his constitutional rights arising out of the dental treatment he received at JCCC.

[3]In addition to Plaintiff's Treatment Records, the Special Report includes Dr. Young's transcription of those Treatment Records for the period May 5, 2005 through June 7, 2010.  *See* Special Report, Attachment 4, Transcribed Dental Records.  Because there is no variance between the Treatment Records and Dr. Young's transcription of those records, the Court's reference to Plaintiff's Treatment Records, includes both Attachments 4 and 5 to the Special Report unless otherwise specified.

3.      On May 24, 2004, Plaintiff transferred from JCCC to WKCC at which time his dental chart was reviewed. *See* Special Report, Attachment 1, Plaintiff's CRC; *see also id.*, Attachment 5, Treatment Records.

4.      On May 1, 2005, Plaintiff submitted a Request for Medical Services complaining of "a very bad toothache." *See* Plaintiff's Response, Exhibit 1 at p. 1, Request for Medical Services. In response to this Request, on May 4, 2005, Plaintiff received his first dental treatment at WKCC from Defendant, James Young, D.D.S. *See id.*; *see also* Treatment Records (May 4, 2005).

5.      On August 21, 2005, Plaintiff submitted a Request for Medical Services requesting dental treatment. *See* Plaintiff's Response, Exhibit 1 at p. 2 Request for Medical Services. In response to this Request, on August 24, 2005, Plaintiff received dental treatment from Dr. Young. *See id.*; *see also* Treatment Records (August 24, 2005).[4]

6.      Plaintiff next requested dental treatment on December 29, 2006. *See* Plaintiff's Response, Exhibit 1 at p. 3, Request for Medical Services. In response to this request, on January 22, 2007, Plaintiff received dental treatment from Dr. Young. *See id.*; *see also* Treatment Records (January 22, 2007).

---

[4]Plaintiff had a scheduled appointment with Dr. Young on August 14, 2005. Plaintiff's treatment records show that he "signed in & waited a short time, then left the clinic." *See* Treatment Records (Special Report, Attachment 5 at p. 23). Plaintiff thereafter submitted the request for dental treatment dated August 21, 2005.

7.    In addition to the treatment Plaintiff received in response to his specific requests, from May 2005 through November 2009 the record shows Plaintiff received the following dental treatment:

- In November 2005, Dr. Young removed Tooth # 15 and Tooth #16. In addition, Dr. Young removed root tip # 14. *See* Treatment Records, (November 2005).

- In March 2006, Plaintiff missed two scheduled appointments due to illness. On March 22, 2006, Dr. Young removed Tooth #6 and Tooth #8. *See* Treatment Records (March 2006).

- In 2007, Plaintiff received treatment from Dr. Young on an almost monthly basis. *See* Treatment Records (February 2007; March 2007; April 2007; May 2007; June 2007; August 2007; September 2007; October 2007; December 2007). The majority of the work performed involved restorative work. *See id.*

- Plaintiff also received continuous dental treatment in 2008. *See* Treatment Records (February 2008; April 2008; August 2008; September 2008; November 2008).

- In the year 2009, Plaintiff also received dental treatment on a regular and continuous basis. *See* Treatment Records (January 2009; February 2009; April 2009; June 2009; August 2009; November 2009).

8.     The ODOC's Dental Program identifies as its objectives to: (1) "[r]elieve pain and alleviate infection; (2) [e]ncourage offenders to preserve and maintain their own natural dentition through education; and (3) [r]estore and help the offender maintain the oral cavity in a healthy condition." *See* Dental Services Program, ¶ I(B) (Dental Program Objectives).

9.     Consistent with these objectives, the Dental Services Program requires the prisoner to meet a plaque index of 35% or lower in two consecutive exams, separated by a two week minimum time span, before the prisoner is eligible for partial dentures. *See* Dental Services Program ¶¶ I(E)(9)(e) and I(E)(10).

10.    Plaintiff's plaque index exceeded 35% on the following dates: January 22, 2007; March 26, 2007; May 7, 2007; August 20, 2008; and September 23, 2008. *See* Treatment Records, Plaque Index Charts. *See also* Special Report, Attachment 3, Affidavit of James Young, D.D.S. (Young Affidavit).

11.    On April 11, 2007 and June 28, 2007, Plaintiff's plaque index was below 35% but these indexes did not occur within two consecutive examinations. *See* Treatment Records, Plaque Index Charts. However, Plaintiff met the plaque index requirement when his plaque index was below 35% in November 2008 and February 2009 for two consecutive examinations. *See id*. *See also* Young Affidavit.

12. The Dental Services Program also requires that "[a]ll fillings or other restorative treatment will be completed" as a condition to eligibility for partial dentures. *See* Dental Services Program, ¶ I(E)(10).

13. Plaintiff's restorative treatment was completed in November 2009. *See* Treatment Records (November 2009). Immediately thereafter, in December 2009, Dr. Young took the steps necessary to initiate fitting Plaintiff with partial dentures by ordering x-rays to submit to the "Removable Partial Denture Board" and taking other related action. *See* Treatment Records (December 2009); *see also* Young Affidavit.

14. In April 2010, primary and final impressions were made for Plaintiff's partial dentures. *See* Treatment Records (April 2010).

15. In June 2010, a bite registration and shade selection was made for Plaintiff's partial dentures. *See* Treatment Records (June 2010).[5]

16. The record contains evidence of a single grievance submitted by Plaintiff for the time period relevant to Plaintiff's Eighth Amendment claim. On August 8, 2008, Plaintiff submitted a grievance and complained that "for nearly (5) five years I have been subjected to unreasonable pain, suffering, and loss of health

---

[5]Plaintiff filed this lawsuit on April 15, 2010. During the months of April through June, 2010, dental work for preparation of the dentures was underway. These are the last entries in the record before the Court for dental treatment provided to Plaintiff. Plaintiff, in responding to Defendants' Motion, does not make any allegations or otherwise contend that he has been denied partial dentures.

due to denial of an upper set of dentures under the guise of a so-called treatment plan." *See* Complaint, Exhibit 1 at p. 2 (Inmate/Offender Grievance Report Form); *see also* Special Report, Attachment 2 at pp. 8-9 (same). Plaintiff's grievance was denied and the denial was affirmed on September 26, 2008, on appeal to the reviewing authority. Plaintiff was advised that he was receiving dental care in accordance with the ODOC's Dental Services Program. *See* Special Report, *id*. at pp. 11-13. Plaintiff was also advised that if he needed further assistance with any dental concern, he should submit a request for medical services. The record contains no evidence that Plaintiff submitted any further request for medical services. *See id*.[6]

---

[6]In denying the appeal of the grievance, Plaintiff was advised as follows:

According to OP-140124, entitled "Dental Services," in part, eligible candidates for removable partial dentures must demonstrate an ongoing acceptable level of oral hygiene, which is validated by a documented plaque index of 35% or lower, on at least two occasions, separated by a two week minimum time span. In addition, all fillings or other restorative treatment must also be completed.

Pertinent information from your dental records was obtained and reviewed by the department's chief dental officer, Vicki Harless, D.D.S. According to your record, your last two plaque index readings obtained on June 28, 2007 and August 20, 2008, were 25% and 66% respectively. In addition, all your restorative treatment has not yet been completed.

In light of the foregoing, you are not yet eligible to receive dentures. According to Dr. Harless, you are receiving dental care and treatment in accordance with OP-140124.

* * *

(continued...)

### B.    **Eighth Amendment Analysis**

The Eighth Amendment creates an obligation on the part of prison officials to provide inmates with a "level of medical care which is reasonably designed to meet the routine and emergency health care needs of inmates." *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980). *See also Estelle v. Gamble*, 429 U.S. 97, 103 (1976). This obligation includes the provision of dental care. *Ramos*, 639 F.3d at 574. As the Tenth Circuit has observed, "[p]risoners generally have more extensive dental problems than the average citizen. Consequently, dental care is one of the most important medical needs of inmates." *Ramos*, 639 F.3d at 576.

The fact that a state must provide medical and dental treatment does not mean, however, that mere negligence in diagnosing or treating an inmate's medical condition gives rise to a valid constitutional claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106. Rather, to establish an Eighth Amendment violation, the prisoner must satisfy two requirements consisting of an objective and a subjective component. *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). To satisfy the objective component, an inmate must allege facts to demonstrate that the deprivation at issue (here, the alleged delay and denial of dental treatment) was sufficiently serious. *Id*. A delay in medical care is sufficiently serious only

---

[6](...continued)
If you need further assistance with any dental concerns, you must submit a "Request for Medical Services" form (attached), via the sick call process at your facility.

*See* Complaint, Exhibit 1 at 6 (Reviewing Authority Grievance Denial); *see also* Special Report, Attachment 2 at 7 (same).

if the prisoner can show the delay resulted in substantial harm. *Id*. "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id*. (citation and internal quotations omitted).

The subjective component requires the prisoner to present evidence that prison officials acted with a sufficiently culpable state of mind. *See Mata*, 427 F.3d at 751(*citing Estelle*, 429 U.S. at 106). The required state of mind is one of deliberate indifference. *Id*. The subjective component is not satisfied unless a prison official knows of an excessive risk to a prisoner's health and safety and disregards that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Moreover, "[i]f an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability under this standard." *DeSpain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001).

In addition, disagreements with the treatment provided by prison medical staff do not in themselves rise to the level of deliberate indifference necessary to show a violation of the Eighth Amendment. *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999). Therefore, while a plaintiff may not like or agree with the treatment decisions made by prison staff, mere disagreement with the medical care provided is insufficient to state a cognizable constitutional claim for relief under § 1983.

The Court assumes, without deciding, that the dental problems experienced by Plaintiff were sufficiently serious to satisfy the objective component of an Eighth

Amendment claim. But because Plaintiff cannot satisfy the subjective component of his Eighth Amendment claim, Defendants are entitled to judgment as a matter of law in their favor as to Plaintiff's claim.[7]

The Court first addresses Plaintiff's Eighth Amendment claim against Defendant Young. The Court then turns to Plaintiff's Eighth Amendment claim against Defendants McCoy and Stebens.

### 1.    Defendant Young

Plaintiff claims he suffered a sufficiently serious harm resulting from delayed dental care. Plaintiff first contends he did not promptly receive dental care upon his arrival at WKCC. He contends he arrived at WKCC in May 2004, but that Dr. Young did not schedule him for a treatment visit until March 2006. *See* Plaintiff's Response at p. 5, ¶ 6.[8]

---

[7]Purportedly, to show that the dental problems he suffered were sufficiently serious, Plaintiff attaches evidence of his need for mental health services beginning in August 2008 to treat depression. *See* Plaintiff's Response, Exhibit 2, Progress Notes (treatment for depression). The initial treatment record notes "dental problems" as a current stressor, though no subsequent records make reference to dental problems. *See id.* Plaintiff does not claim he was delayed or denied any treatment for his depression, or any other mental illness, but relies on this evidence solely for purposes of his dental care claim. Because the Court assumes, but does not decide, that Plaintiff's factual allegations satisfy the objective component of his Eighth Amendment claim, this evidence is not addressed further. To the extent Plaintiff also submits this evidence with respect to the subjective component of his Eighth Amendment claim, Plaintiff has failed to show that the named Defendants had knowledge of his depression or any relationship between the depression and his dental treatment.

[8]The Court notes that although not raised as a defense by Defendants, it appears any claim alleging a delay of dental care from May 2004 (his arrival date at WKCC) through March 2006 (his alleged first treatment at WKCC) is barred by the applicable two-year limitations period. *See Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988) (explaining that applicable state statute of limitations governs actions brought pursuant to 42 U.S.C. § 1983 and applying Oklahoma's two-year statute of limitations for "injury to the rights of another, not arising on contract, and not hereinafter (continued...)

As set forth above, the undisputed factual record shows that Plaintiff received dental treatment on May 4, 2005, approximately one year after his arrival at WKCC. Plaintiff is correct that the dental treatment received on that date was in response to a request for treatment submitted by Plaintiff just three days prior on May 1, 2005. Plaintiff does not claim treatment was delayed or denied in response to his request. And, Dr. Young scheduled follow-up treatment for Plaintiff but the record shows that on August 15, 2005, Plaintiff signed in for this appointment, waited for a short time, and then left. *See* Treatment Records (August 15, 2005). Plaintiff's own conduct, therefore, necessitated the filing of his second request for dental treatment which he submitted on August 21, 2005, and pursuant to which he received treatment on August 24, 2005. Again, Plaintiff does not claim treatment was delayed or denied in response to his request.

Moreover, the record discloses Plaintiff was treated by Dr. Young on more than one occasion between August 24, 2005, and his next request for dental treatment made on December 29, 2006. As set forth above, thereafter, Plaintiff was seen on a regular and continuous basis.

Plaintiff has failed to establish that Dr. Young's treatment provided from his arrival date at WKCC through March 2006, constitutes deliberate indifference. During his initial year at WKCC (from May 2004 through May 2005), Plaintiff did not request dental services

---

[8](...continued)
enumerated") (*quoting* Okla. Stat. tit. 12, § 95(3)). Because the defense has not been raised, however, the Court has not conducted an analysis of the timeliness of Plaintiff's Eighth Amendment claim.

or file any grievances pertaining to dental care at WKCC. And, Plaintiff's request for dental services thereafter were promptly addressed. In addition, Dr. Young provided both follow-up and continuous treatment thereafter. Therefore, Plaintiff has not shown that Dr. Young acted with deliberate indifference. There is no evidence that Plaintiff faced a substantial risk of serious harm during the course of Dr. Young's treatment or that Dr. Young ignored such a substantial risk of serious harm. *See Farmer*, 511 U.S. at 837.

Plaintiff next claims he suffered constant pain and relies upon evidence in his dental treatment records that he was prescribed ibuprofen by Defendant Young. *See* Plaintiff's Response, at p. 2, ¶ 2 *citing* Treatment Records for March 22, 2006; January 27, 2007; June 28, 2007; August 9, 2007; October 25, 2007 and February 14, 2008. A review of the Treatment Records shows that Plaintiff was prescribed ibuprofen for purposes of specific dental work performed on those dates and to alleviate any associated pain experienced by Plaintiff. Moreover, Plaintiff was seen by Dr. Young on an almost monthly basis during the period cited by Plaintiff. Dr. Young's vigilant prescribing of ibuprofen to help Plaintiff with his pain shows anything but deliberate indifference.[9]

Plaintiff further claims Dr. Young's deliberate indifference is evidenced by the fact that he performed restorative work on particular teeth "three times each" due to Dr. Young's

---

[9]Moreover, on some of the dates of treatment cited by Plaintiff, Plaintiff had reported to Dr. Young that he "occasionally" takes ibuprofen, indicating that Plaintiff's need for ibuprofen was not as great as he now alleges and further contradicting Plaintiff's claim that Dr. Young acted with deliberate indifference. *See, e.g,*, Plaintiff's Treatment Records, May 7, 2007; June 28, 2007; December 10, 2007.

use of temporary fillings. Plaintiff claims Dr. Young's use of these temporary fillings caused "long-term pain and suffering." *See* Plaintiff's Response at p. 4, ¶ 4. Plaintiff provides no medical evidence whatsoever that Dr. Young's course of treatment was improper or that use of temporary fillings was unnecessary. As such, Plaintiff's response amounts to nothing more than a difference of opinion about the course of dental treatment and is insufficient to rise to the level of a constitutional violation. *See Estelle*, 429 U.S. at 104-106.

As detailed above, Plaintiff has received continuous dental treatment throughout the period of his incarceration, in accordance with a dental treatment plan. The record does not disclose any instance in which a request for dental care by Plaintiff was made and denied. Instead, as evidenced by the requests for dental treatment Plaintiff attaches in response to Defendants' Motion, each time Plaintiff made such a request he was promptly seen and treated.

Plaintiff also contends the partial dentures should have been provided to him sooner. But Plaintiff does not demonstrate that Dr. Young acted with deliberate indifference to delay care.[10] Instead, the record shows Dr. Young provided treatment in accordance with a designated treatment plan, completing restorative treatment and monitoring Plaintiff's oral hygiene compliance – both prerequisite conditions to Plaintiff's eligibility for partial

---

[10]In the Complaint, Plaintiff alleges that he "repeatedly requested dentures from Defendant Young since coming to the WSKCC prison facility in May 2004." *See* Complaint at 2, ¶B, Nature of the Case. But the evidence of record does not support his allegation. As set forth above, Plaintiff submitted limited requests for dental services, all responded to in a prompt and proper manner and filed a single grievance regarding dentures.

14

dentures. To the extent Plaintiff disagrees with the treatment plan provided, his mere disagreement does not rise to the level of a constitutional violation. *See Estelle*, 429 U.S. at 104-106. Further, to the extent Plaintiff's dental claim is based on the contention that he has a right to a particular course of treatment, the Tenth Circuit has rejected "such an expansive view of the rights protected by the Eighth Amendment." *Cf. Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (*citing Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997) ("We are persuaded that a showing of deliberate refusal to provide medical attention, *as opposed to a particular course of treatment*, coupled with falsification of medical records may give rise to an Eighth Amendment violation and is cognizable under 42 U.S.C. § 1983.") (emphasis added)).

In sum, the summary judgment record submitted to this Court, with all reasonable inferences drawn in Plaintiff's favor, shows that there is no genuine issue of material fact. Plaintiff has not demonstrated that Defendant Young acted with deliberate indifference to his serious dental needs, and therefore Defendant Young is entitled to judgment as a matter of law in his favor.

## 2. **Defendants McCoy and Stebens**

Defendants McCoy and Stebens seek summary judgment in their favor on grounds that Plaintiff has alleged no facts demonstrating their personal involvement in the alleged deprivation of Plaintiff's Eighth Amendment rights. Defendants contend they only responded to Plaintiff's administrative grievance regarding his dental treatment but were not involved in decisions regarding the dental treatment itself. To the extent Plaintiff sues them

in any supervisory capacity, Defendants contend Plaintiff has failed to demonstrate their personal participation in the alleged deprivation of his constitutional rights.

Defendants McCoy and Stebens are correct that Plaintiff's allegations against them relate solely to their roles in reviewing and denying Plaintiff's single grievance related to his dental care. These allegations are insufficient to establish § 1983 liability.

In an analogous case, *Johnson v. Mullin*, 422 F.3d 1184, 1186-1187 (10th Cir. 2005), the Tenth Circuit found no § 1983 liability based on Plaintiff's allegations of delayed dental treatment. There, the plaintiff alleged the defendants "allegedly refused to arrange for plaintiff to see a dentist prior to the regular prison dentist's scheduled rounds." The Tenth Circuit  characterized the plaintiff's claims against the defendants as follows:

> Plaintiff names the warden in this action because he signed off on the health service administrator's denial of his grievance; the latter is named because he told plaintiff he was scheduled for an appointment with the dentist "in the very near future" and later denied plaintiff's grievance; the dental assistant is named because she informed plaintiff that, while he was on the list for dental service, a dentist visited the facility only once a week.

*Johnson*, 422 F.3d at 1186. The Tenth Circuit held that the plaintiff's allegations did not satisfy the subjective component of his Eighth Amendment claim. *Id*. Similarly here, Plaintiff has not shown that the conduct of either Defendant McCoy or Defendant Stebens satisfies the subjective component. Like the warden and the health service administrator in *Johnson*, Plaintiff alleges only that Defendants McCoy and Stebens denied his grievance and advised him that he had a treatment plan in place.

To the extent Plaintiff seeks to impose supervisory liability against Defendants McCoy and Stebens, the factual record is insufficient to support imposition of such liability. As set forth above, Plaintiff has not demonstrated that Dr. Young violated his Eighth Amendment rights in providing dental treatment. It necessarily follows, therefore, that Defendants McCoy and Stebens are not liable, in any supervisory role over Dr. Young, for a deprivation of Plaintiff's constitutional rights. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (discussing circuit precedent holding that to impose § 1983 liability against a supervisor, a plaintiff must first show the supervisor's subordinates violated the plaintiff's constitutional rights) (citation omitted).

In addition, the denial of a grievance, without more, is generally insufficient to demonstrate the personal participation in the alleged constitutional violation required to establish § 1983 liability. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (prisoner's allegations against defendants related only to their denial of his grievances and did not establish an affirmative link between those defendants and any alleged violation of the prisoner's constitutional rights). Accordingly, Defendants McCoy and Stebens are entitled to judgment as a matter of law in their favor as to Plaintiff's Eighth Amendment claim.[11]

---

[11]In responding to Defendants' Motion, Plaintiff alleges that Defendants McCoy and Stebens "had actual knowledge and denied relief and acquiesced in its continuance . . . ." but despite these allegations, Plaintiff provides no evidence demonstrating that Defendants McCoy and Stebens played a role in the provision of dental care or had knowledge of his dental concerns outside the grievance process. For the first time, in a Motion for Order for Judicial Notice [Doc. #23] filed
(continued...)

In sum, even taking the facts and their inferences in the light most favorable to Plaintiff, his allegations and the supporting evidence do not establish the essential subjective component of Plaintiff's Eighth Amendment claim as to any of the Defendants. In addition, Plaintiff has failed to establish any basis for supervisory liability over Defendants McCoy and Stebens. Therefore, Defendants' Motion should be granted and judgment as a matter of law should be entered in favor of each of the Defendants.

## V. <u>Plaintiff's Pending Motions</u>

Plaintiff has the following motions currently pending before the Court: (1) Motion to Appoint Counsel [Doc. #22] and (2) Motion for Order for Judicial Notice [Doc. #23]. It is recommended that these motions be denied.

### A. <u>Motion to Appoint Counsel</u>

Plaintiff requests the appointment of counsel. In support, Plaintiff claims he has attempted to obtain legal services without avail. He claims counsel is needed because the case "will likely involve substantial investigation and discovery" and "a lawyer would help plaintiff to apply the law properly in briefs and before the Court." *See* Plaintiff's Motion at 1. He further claims counsel is needed at trial in this case to "assist plaintiff in the presentation of evidence and the cross-examination of opposing witnesses." *See id*. at 2.

---

[11](...continued)
subsequent to the Complaint (and discussed *infra*), Plaintiff appears to allege these Defendants have engaged in a pattern or practice of denying medical care to prisoners at WKCC. Because Plaintiff brings no such claim in his Complaint, his allegations are not addressed. And, as discussed *infra* in the context of Plaintiff's Motion for Order for Judicial Notice, such allegations are, in any event, unsupported and not material to the Eighth Amendment dental care claim brought by Plaintiff.

Plaintiff further claims deficiencies in the law library at WKCC and his inability to spend adequate time in the law library require the appointment of counsel. *See id.*

District courts are granted broad discretion with regard to the decision to request an attorney to represent an indigent litigant in a civil proceeding. *See Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991); 28 U.S.C. § 1915(e)(1). In exercising this discretion, the Court must consider a number of factors, including: (1) the merits of the litigant's claims, (2) the nature of the factual issues involved, (3) the litigant's ability to present the claims and (4) the complexity of the legal issues raised. *Rucks v. Boergermann*, 57 F.3d 978 (10th Cir. 1995).

As set forth in the above analysis, Defendants are entitled to judgment as a matter of law in their favor eliminating a need for a trial of this action. Moreover, on the record before the Court, Plaintiff has demonstrated adequate adeptness at presenting the facts and law applicable to his Eighth Amendment claim. In addition, the factual and legal issues surrounding Plaintiff's Eighth Amendment claim are not complex. Under these circumstances, Plaintiff has failed to demonstrate that appointment of counsel is warranted, and his Motion for Appointment of Counsel should be denied.

### B. <u>Motion for Order for Judicial Notice</u>

Plaintiff has filed a Motion for Order for Judicial Notice [Doc. #23] and requests this Court to take judicial notice of pleadings filed in two civil actions currently pending in this judicial district: (1) *Stephens v. Jones, et al.,* CIV-10-166-D and (2) *Riley v. Jones, et al.,* CIV-10-416-D. Defendants have filed an Objection to Plaintiff's Motion [Doc. #26] and

Plaintiff has filed a Reply [Doc. #28]. In the Motion, Plaintiff does not identify any particular pleadings or evidence from these civil actions but generally alleges the pleadings "establish a pattern of behavior of Defendants Genese McCoy and Mary Stebens, and show that Defendants actions are not single acts of negligence." *See* Plaintiff's Motion at 1. In his Reply, Plaintiff claims the information submitted in the Special Report constitutes "admitted facts not disputed by the Defendants," *see* Reply at 3, but does not otherwise identify any specific information or facts.

Defendants have filed an Objection to Plaintiff's Motion for Judicial Notice [Doc. #26] on grounds that "[t]here have been no orders or other findings made in the cases" and that "[t]hese cases stand for nothing more than unsubstantiated assertions made by other inmates." *See* Defendants' Objection at 1.

The Court has reviewed the complaints filed in each of the civil actions referenced by Plaintiff as well as the dockets in those cases. Defendant Dr. Young is not a party to those actions. Only Defendants McCoy and Stebens are named in those actions. Moreover, the actions do not involve alleged denial of dental care. Therefore, Plaintiff has failed to demonstrate the relevance of the factual allegations made in these other federal civil actions. In addition, as of the date of the filing of this Report and Recommendation, no findings have been made by the Court with respect to the Defendants' pending motions for dismissal or alternatively summary judgment. Accordingly, Plaintiff's request seeks to have the Court take judicial notice of nothing more than the allegations of the complaints filed by other

inmates housed at WKCC and alleged factual admissions of the defendants to those actions, based on information submitted with the court-ordered Special Reports filed in those actions.

Judicial notice of the pleadings filed in these other federal civil actions as requested by Plaintiff is not proper. In a recent unpublished decision, *Arocho v. Nafziger*, 367 Fed. Appx. 942, 952 n.12 (10th Cir. March 1, 2010), the Tenth Circuit Court of Appeals noted "an erroneous line of analysis" with respect to judicial notice taken by the district court. There, the district court, addressing an Eighth Amendment claim of deliberate indifference brought by a prisoner, relied upon an affidavit submitted by defendants in a different action filed by the same prisoner and related to his medical condition. The district court relied on the affidavit as proof of a lack of deliberate indifference by defendants. The Tenth Circuit found taking judicial notice of the affidavit improper:

> [I]t is improper to decide a motion to dismiss on the basis of evidence submitted by the defendant – that is what summary judgment is for. The court considered its course of action authorized by the fact that it "may take judicial notice of court documents and matters of public record." *Id.* (quotation omitted). But a party's evidentiary materials are not "court documents" that may be judicially noticed as true: "a court cannot notice pleadings or testimony as true simply because these statements are filed with the court" and "a court cannot take judicial notice of the truth of a document simply because someone put it in the court's files." 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5106.4 at 232, 234 (2d ed. 2005). Thus, for example, the content of an affidavit generated to support a party's case does not become judicially noticeable fact when the party files the affidavit with the court. *See, e.g., United States v. Burch*, 169 F.3d 666, 672 (10th Cir.1999). If it were otherwise, a party could just attach all of his evidence to a motion for dismissal and thereby vitiate the critical distinction between dismissal proceedings, which are supposed to challenge the legal sufficiency of the complaint, and summary judgment proceedings, which properly encompass opposing evidence.

*Arocho*, 367 Fed. Appx. at 952 n.12; s*ee also York v. American Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996) ("Judicial notice is appropriate where a matter is verifiable with certainty. It replaces the evidentiary procedure that would otherwise be necessary to establish adjudicative facts that are generally known or capable of accurate and ready determination by resort to reliable sources.") (citation and quotations omitted).

Here, Plaintiff seeks judicial notice of the exact type of information found to be improper in *Arocho*. As Tenth Circuit authority makes clear, judicial notice of the pleadings filed in the other two pending civil actions is not proper. Accordingly, Plaintiff's Motion for Order for Judicial Notice should be denied.

## RECOMMENDATION

For the reasons set forth, it is recommended that Defendants' Motion for Summary Judgment [Doc. #17] be granted and that judgment be entered as a matter of law in favor of each of the Defendants. It is further recommended that Plaintiff's Motion for Appointment of Counsel [Doc. #22] and Plaintiff's Motion for Order for Judicial Notice [Doc. #23] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file objections to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of this Court by November ___17th___, 2010. *See* Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the

right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred in this matter and terminates the referral.

ENTERED this __27th__ day of October, 2010.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE